UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JAMES CONNER,

        Petitioner,

                                Case No. 2:11-cv-15620

v.                                Honorable George Caram Steeh

TOM BIRKETT,

        Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

This matter has come before the Court on petitioner James Conner's pro se application for the writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is a state prisoner at the Central Michigan Correctional Facility in St. Louis, Michigan. His habeas petition challenges convictions for armed robbery, assault with intent to do great bodily harm less than murder, unlawfully driving away an automobile, and malicious destruction of personal property. Petitioner alleges that (1) there was insufficient evidence to support his robbery conviction, (2) the trial court abused its discretion during post-conviction proceedings, (3) the prosecution illegally gathered a blood sample from him, (4) the prosecution suppressed witness statements, (5) the prosecution failed to disclose, preserve, and test key evidence, (6) the prosecution broke the chain of evidence and failed to subject evidence to scientific or forensic testing, and (7) trial counsel was ineffective.

Respondent Tom Birkett urges the Court to deny the habeas petition on the basis that petitioner's claims are procedurally defaulted, are not cognizable on habeas review, or were adjudicated in a reasonable manner by the state court.  Having reviewed the pleadings and state-court record, the Court concludes that the state court's adjudication of petitioner's first claim on the merits was reasonable, that petitioner's second claim is not cognizable on habeas review, and that petitioner's remaining claims are procedurally defaulted.  Accordingly, the habeas petition will be denied.

## I.  Background

### A.  The Charges, Trial, and Sentence

Petitioner was charged with twelve counts:  two counts of assault with intent to commit murder, one count each of armed robbery, carjacking, and assault with intent to commit criminal sexual conduct involving sexual penetration, two counts of assault with intent to do great bodily harm less than murder, two counts of assault with a dangerous weapon, and one count each of unlawfully driving away an automobile, malicious destruction of property, and assault with intent to rob while armed.  The charges arose from consecutive incidents that occurred on Whitmore Street in Detroit, Michigan on January 29, 2008.

At petitioner's bench trial in Wayne County Circuit Court, Ditwan Marie Morgan testified that, on January 29, 2008, she drove to petitioner's home because he had previously fixed her cars, and she wanted petitioner to show her how to put her new car in reverse.  The two of them went to the store where they purchased beer and liquor.  Then they went to her apartment and started drinking.  Her friend Chantell Hanshaw was also at the apartment.  When petitioner exposed his penis to her, she told him to

leave.  Instead of leaving, petitioner beat the walls and knocked things over.  She tried

to push him out the apartment, but petitioner grabbed an aluminum bat that she kept in

the apartment and chased her as she ran out of the apartment.  She ran through the

hallway of the apartment building and then back to her apartment where she ended up

on the floor.  Petitioner then hit her on the head with the bat.  Later, at the hospital, she

received nine staples on the back of her head and stitches on her forehead.

Chantell Hanshaw testified that she was at Ms. Morgan's apartment on January

29, 2008, when petitioner and Morgan arrived at the apartment and started drinking and

talking.  Petitioner and Morgan began to argue when petitioner asked Morgan for sex.

Morgan then asked petitioner to leave, and petitioner began to throw things and hit

Morgan on the face with his fists.  Petitioner grabbed an aluminum bat and chased

Morgan out of the apartment.  He kicked Morgan on the back, hit her with the bat while

she was lying on the floor, and then ran away.  Hanshaw subsequently called the 911

operator.

Joseph Taylor testified that he was warming up his minivan about 1:10 p.m. on

January 29, 2008, when he noticed petitioner approach a mailman.  After the mailman

shook his head and left in his mail truck, petitioner approached Taylor and demanded

money.  When Taylor told petitioner that he did not have any money, petitioner pulled

out an aluminum baseball bat from under his jacket and broke a window in the minivan.

Taylor then pulled out of his parking spot and got out of his van.  Petitioner approached

him, swung the bat at him two or three times, and jumped in Taylor's van.  Taylor was

afraid because he thought that petitioner was going to hit him with the bat.  He

nevertheless got part way inside the van and grabbed the steering wheel as petitioner

drove slowly forward, dragging Taylor, whose legs were outside the van.  Although

petitioner alternately hit the gas pedal and then the brakes, Taylor managed to get in

the van, put it in park, and get petitioner out of the van.  He threw the bat away and

proceeded to get into an altercation with petitioner.  He subdued petitioner, who fell

unconscious from Taylor's beating.  The police subsequently arrived.

Michael Harvey testified that he was employed by the United States Postal

Service on January 29, 2008.  About 1:10 p.m. that day, petitioner approached him on

Whitmore Street in Detroit and asked him for a ride.  Petitioner looked kind of frazzled,

anxious, and harried; his eyes were red, and he had a baseball bat under his jacket.

Harvey drove away after informing petitioner that he could not give him a ride.

Police Officer Darryl Cross testified that he responded to 980 Whitmore Street in

Detroit about 1:15 p.m. on January 29, 2008.  When he arrived at the scene, Joseph

Taylor was standing over petitioner, who was lying on the ground.  Taylor stated that

petitioner had tried to rob him.  Then a young lady came by and stated that petitioner

had assaulted her friend in the apartments behind them.  Petitioner had blood on his

face, and Taylor stated that a bat on the ground had been used on him during the

attempted carjacking.  Although Officer Cross's police report mentioned that a club,

blackjack, and brass knuckles were visible at the scene, he explained that the computer

program, which he had used to prepare his report did not allow him to insert the word

"bat."  The closest thing was "club," and the computer automatically added in

parentheses or commas the words "brass knuckles," "stick," and other things.

Petitioner was arrested at the scene and taken to the hospital.  He was the only

defense witness at his trial.  He corroborated Ms. Morgan's testimony about being

picked by Morgan on January 29, 2008, going to the store for beer and liquor, and then going to Morgan's apartment.  But he denied asking Morgan for sex, exposing himself to her, breaking things in her apartment, or hitting her with the bat.  He maintained that Morgan had struck him with the bat and that someone had dragged him down the hallway in the apartment building.  He said that he did not remember approaching Mr. Taylor, demanding money from him, or smashing the window of Taylor's van.  He did recall hearing voices and several cars pulling up, and he claimed that he regained consciousness later that night in the hospital.  Taylor testified on rebuttal that petitioner was wearing a "starter" jacket without a shirt underneath it on January 29, 2008, and that petitioner did not appear to have any injuries when he approached Taylor that day.

The trial court found petitioner guilty of one count of armed robbery, MICH. COMP. LAWS § 750.529, two counts of assault with intent to do great bodily harm less than murder, MICH. COMP. LAWS § 750.84, one count of unlawfully driving away an automobile, MICH. COMP. LAWS § 750.413, and one count of malicious destruction of personal property worth at least $200, but less than $1,000, MICH. COMP. LAWS § 750.377a(1)(c)(i).  The trial court dismissed the twelfth count (assault with intent to rob while armed) and acquitted petitioner of the remaining counts.

Petitioner was thirty-five years old at his sentencing on January 21, 2009.  The trial court sentenced him to concurrent sentences of fifteen to thirty years in prison for the armed robbery, nineteen months (one year, seven months) to ten years in prison for the assaults with intent to commit great bodily harm, ten months to five years in prison for unlawfully driving away an automobile, and time served for the malicious destruction of property.  Petitioner moved for re-sentencing, and on June 12, 2009, the trial court's

successor re-sentenced petitioner to a term of ten to twenty-five years in prison for the armed robbery with 497 days of jail credit.  The other sentences remained the same.

**B.  The Direct Appeal, Post-Conviction Proceedings, and Habeas Corpus Petition**s

Petitioner appealed his robbery conviction on the basis that there was insufficient evidence produced at trial to support the conviction.  The Michigan Court of Appeals affirmed petitioner's conviction, but remanded the case so that the judgment of sentence could be corrected to include the sentence for malicious destruction of property.  See People v. Conner, No. 290284, 2010 WL 3296090 (Mich. Ct. App. Aug. 19, 2010) (unpublished).  On December 20, 2010, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review petitioner's challenge to the sufficiency of the evidence.  See People v. Conner, 488 Mich. 996; 791 N.W.2d 455 (2010) (table).

On December 22, 2011, petitioner commenced this action, arguing that his armed robbery conviction was based on insufficient evidence.  (ECF No. 1).  Before respondent could file an answer to the petition, petitioner moved for a stay while he pursued state remedies for several new claims.  (ECF No. 7).  On April 12, 2012, former United States District Judge Patrick J. Duggan granted petitioner's motion for a stay and closed this case for administrative purposes.  (ECF No. 8).

Petitioner then filed a motion for relief from judgment in the state trial court.  He argued that (1) the prosecution illegally gathered a blood sample from him and used the test results at trial, (2) the prosecution suppressed witness statements and thereby prevented him asserting a defense, (3) the prosecution failed to disclose key evidence, (4) the police officers' investigative tactics violated his right to due process, and (5)

defense counsel's failure to make reasonable investigations fell below an objective standard of reasonableness. The trial court denied petitioner's motion, and the State's appellate courts denied leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). See People v. Conner, No. 315662 (Mich. Ct. App. Oct. 30, 2013); People v. Conner, 495 Mich. 978; 843 N.W.2d 895 (2014).

On May 28, 2014, Petitioner filed an amended petition for the writ of habeas corpus and a motion to lift the stay. (ECF Nos. 10 and 13). On September 25, 2014, the Court granted petitioner's motion, re-opened this case, and ordered respondent to file an answer to the petition. (ECF No. 15). Respondent subsequently filed his answer to the petition (ECF No. 16), and petitioner filed a reply (ECF No. 18).

## II. Standard of Review

"The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)." Harrington v. Richter, 562 U.S. 86, 97 (2011). Pursuant to § 2254, the Court may not grant a state prisoner's application for the writ of habeas corpus unless the state court's adjudication of the prisoner's claims on the merits

> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> Under the "contrary to" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that

reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause [of § 2254(d)(1)], a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2000) (O'Connor, J., opinion of the Court for

Part II).  "[A] federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly.  Rather, that application must

also be unreasonable."  Id. at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court

rulings,' Lindh v. Murphy, 521 U.S. 320, 333, n. 7 (1997), and 'demands that state-court

decisions be given the benefit of the doubt,' Woodford v. Visciotti, 537 U.S. 19, 24

(2002) (per curiam)."  Renico v. Lett, 559 U.S. 766, 773 (2010).  "A state court's

determination that a claim lacks merit precludes federal habeas relief so long as

'fairminded jurists could disagree' on the correctness of the state court's decision."

Richter, 562 U.S. at 101 (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

To obtain a writ of habeas corpus from a federal court, a state prisoner must show that

the state court's ruling on his or her claim "was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement."  Id. at 103.

" 'In a proceeding instituted by an application for a writ of habeas corpus by a

person in custody pursuant to the judgment of a State court, a determination of a factual

issue made by a State court shall be presumed to be correct,' unless rebutted by 'clear

and convincing evidence.' " Holland v. Rivard, 800 F.3d 224, 242 (6th Cir. 2015)

(quoting 28 U.S.C. § 2254(e)(1)), cert. denied, 136 S. Ct. 1384 (2016). Finally, "review

under § 2254(d)(1) is limited to the record that was before the state court that

adjudicated the claim on the merits." Cullen v. Pinholster, 563 U.S. 170, 181 (2011).

### III.  Analysis

### A.  Sufficiency of the Evidence

Petitioner contends that he was convicted of armed robbery on the basis of

insufficient evidence.  According to him, the prosecutor failed to prove that he (1) had

the required intent to be found guilty of armed robbery and (2) used force and violence

against the complainant or put the victim in fear.  Petitioner raised this issue on direct

appeal.  The Michigan Court of Appeals adjudicated the claim on the merits and

rejected it.

### 1.  Clearly Established Federal Law

The Supreme Court has held "that the Due Process Clause protects the accused

against conviction except upon proof beyond a reasonable doubt of every fact

necessary to constitute the crime with which he is charged." In re Winship, 397 U.S.

358, 364 (1970).  Following Winship, the critical inquiry on review of a challenge to the

sufficiency of the evidence supporting a criminal conviction is

> whether the record evidence could reasonably support a finding of
> guilt beyond a reasonable doubt.  But this inquiry does not require a
> court to "ask itself whether it believes that the evidence at the trial
> established guilt beyond a reasonable doubt."  Instead, the relevant
> question is whether, after viewing the evidence in the light most
> favorable to the prosecution, any rational trier of fact could have
> found the essential elements of the crime beyond a reasonable
> doubt.  This familiar standard gives full play to the responsibility of

the trier of fact fairly to resolve conflicts in the testimony, to weigh
the evidence, and to draw reasonable inferences from basic facts to
ultimate facts.

Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (internal citations and footnote

omitted) (emphases in original).

The Supreme Court has "made clear that Jackson claims face a high bar in

federal habeas proceedings because they are subject to two layers of judicial

deference."  Coleman v. Johnson, 566 U.S. 650, __, 132 S. Ct. 2060, 2062 (2012) (per

curiam).  First, it is the responsibility of the trier of fact to decide what conclusions

should be drawn from the evidence admitted at trial.  Id. (quoting Cavazos v. Smith, 565

U.S. 1, 2 (2011) (per curiam)).

And second, on habeas review, "a federal court may not overturn a state
court decision rejecting a sufficiency of the evidence challenge simply
because the federal court disagrees with the state court.  The federal court
instead may do so only if the state court decision was 'objectively
unreasonable.' "

Id. (quoting Smith, 565 U.S. at 3 (quoting Lett, 559 U.S. at 773)); see also Davis v.

Lafler, 658 F.3d 525, 531 (6th Cir. 2011) (stating that, because both Jackson and

AEDPA applied to the petitioner's sufficiency-of-the-evidence claim, the law

commanded deference at two levels:  deference to the trier-of-fact's verdict and

deference to the state court's consideration of the trier-of-fact's verdict).

The Jackson standard "must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324

n.16.  Michigan's armed robbery statute reads in relevant part as follows:

A person who engages in conduct proscribed under section 530[1] and who
in the course of engaging in that conduct, possesses a dangerous weapon

---

[1] M.C.L.A. § 750.530.

or an article used or fashioned in a manner to lead any person present to
reasonably believe the article is a dangerous weapon, or who represents
orally or otherwise that he or she is in possession of a dangerous weapon,
is guilty of a felony punishable by imprisonment for life or for any term of
years.

MICH. COMP. LAWS § 750.529 (footnote in original).  The unarmed robbery statute

referenced in this statute reads:

Sec. 530. (1) A person who, in the course of committing a larceny of any
money or other property that may be the subject of larceny, uses force or
violence against any person who is present, or who assaults or puts the
person in fear, is guilty of a felony punishable by imprisonment for not
more than 15 years.

(2) As used in this section, "in the course of committing a larceny" includes
acts that occur in an attempt to commit the larceny, or during commission
of the larceny, or in flight or attempted flight after the commission of the
larceny, or in an attempt to retain possession of the property.

MICH. COMP. LAWS § 750.530.  The incorporation of the unarmed robbery statute into the

armed robbery statute means that, to prove armed robbery, the prosecutor must

demonstrate

that (1) the defendant, in the course of committing a larceny of any money
or other property that may be the subject of a larceny, used force or
violence against any person who was present or assaulted or put the
person in fear, and (2) the defendant, in the course of committing the
larceny, either possessed a dangerous weapon, possessed an article
used or fashioned in a manner to lead any person present to reasonably
believe that the article was a dangerous weapon, or represented orally or
otherwise that he or she was in possession of a dangerous weapon.

People v. Chambers, 277 Mich. App. 1, 7; 742 N.W.2d 610, 614 (2007) (footnote

omitted).  "Armed robbery is a specific intent crime, and the prosecutor must establish

that the defendant intended to permanently deprive the owner of property."  People v.

Lee, 243 Mich. App. 163, 168; 622 N.W.2d 71, 75 (2000) (citing People v. King, 210

Mich. App. 425, 428; 534 N.W.2d 534, 536 (1995)).

### 2. Application

The Michigan Court of Appeals summarized the evidence at petitioner's trial as

follows:

> Conner approached the driver's side of the victim's vehicle carrying a
> baseball bat and demanded money.  When the victim refused, Conner
> smashed the vehicle's window with the baseball bat.  When the victim
> exited the vehicle, Conner rushed at him while swinging the baseball bat
> and then jumped into the van.  Conner was attempting to leave when the
> victim reached inside, grabbed the steering wheel, and attempted to hang
> on to the vehicle.  Conner tried to dislodge the victim by alternately
> braking and accelerating and then shifted into reverse and accelerated,
> proceeding approximately 25 to 30 feet while the victim was dragged
> alongside the vehicle.  The victim was able to enter the van and force
> Conner out of the vehicle.

Conner, 2010 WL 3296090, at *1.  The Michigan Court of Appeals reasonably

concluded from this evidence that there was no question petitioner committed an armed

robbery.

Petitioner contends there was no evidence that he used force and violence

against the victim or put the victim in fear.  Joseph Taylor, however, testified that, when

he refused to give petitioner any money, petitioner pulled out a baseball bat from under

his jacket and broke the window on Taylor's van.  And when Taylor subsequently got

out of his van, petitioner approached him and swung the bat at him two or three times.

Taylor feared that petitioner was going to hit him.  (Trial Tr. at 73-75, Jan. 7, 2009, ECF

No. 17-4, Pg ID 515-517).  This testimony confirms that petitioner used force or violence

against the victim and put the victim in fear.  Although Taylor responded to petitioner's

actions in an aggressive manner by getting out of his car and beating petitioner, it was up to the trial court to determine whether Taylor feared petitioner, and

> [a] reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court. Marshall v. Lonberger, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. Neal v. Morris, 972 F.2d 675, 679 (6th Cir. 1992). . . . The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. Ibid.

Matthews v. Abramajtys, 319 F.3d 780, 788–89 (6th Cir. 2003).

Petitioner nevertheless maintains that there was insufficient evidence of an intent to permanently deprive the victim of his vehicle, as opposed to simply wanting a ride somewhere. "Intent may be inferred from '[t]he facts and circumstances involved in the perpetration of a felony . . . , however, [and] the conclusion must be left to the [trier of fact] to infer from all the evidence.' " People v. Datema, 448 Mich. 585, 601; 533 N.W.2d 272, 279 (1995) (quoting People v. Aaron, 409 Mich. 672, 728-29; 299 N.W.2d 304, 326 (1980)).

According to Mr. Taylor, petitioner he did not ask for a ride; instead, he demanded money, and when Taylor refused to hand over any money, petitioner broke Taylor's van window and attempted to drive away in the van. In the state court's words, "it was neither a leap in logic nor unreasonable to infer that Conner had the requisite intent to commit an armed robbery." Conner, 2010 WL 3296090, at *2.

Finally, petitioner claims that, as a result of the head injury which he received from Ms. Morgan, he was prevented from forming the necessary intent to commit an armed robbery involving Taylor. Although petitioner has submitted medical records indicating that he suffered a closed head injury, the trial court did not find his testimony

credible.  (Trial Tr. at 124, Jan. 7, 2009, ECF No. 17-4, Pg ID 566.)  Even if petitioner

suffered the head injury before his encounter with Taylor, "evidence of mental incapacity

short of insanity cannot be used to avoid or reduce criminal responsibility by negating

specific intent."  People v. Carpenter, 464 Mich. 223, 237; 627 N.W.2d 276, 283 (2001).

Thus, petitioner's head injury was not a basis for concluding that he lacked the

necessary intent to commit armed robbery.

 To conclude, a rational trier of fact could have inferred from the evidence taken in

the light most favorable to the prosecution that petitioner assaulted the victim and took

personal property from the victim while armed with a weapon.  The evidence was

sufficient to sustain petitioner's armed-robbery conviction, and the state appellate

court's decision was neither contrary to, nor an unreasonable application of, Jackson.

Therefore, habeas relief is not warranted on petitioner's claim.

## B.  The Trial Court's Alleged Abuse of Discretion

 Petitioner alleges next that the trial court abused its discretion when reviewing his

post-conviction motion for relief from judgment and his requests for an evidentiary

hearing and appointment of counsel.  Petitioner contends that the trial court failed to

promptly review his motion and requests in accordance with Michigan Court 6.504(B)

and then imposed a procedural bar to dispose of the motion.

 Petitioner first raised this claim on appeal from the trial court's denial of his

motion for relief from judgment.  Neither the Michigan Court of Appeals, nor the

Michigan Supreme Court adjudicated the claim on the merits.  Instead, both courts

rejected Petitioner's application for leave to appeal in brief orders stating that Petitioner

had failed to meet the burden of establishing entitlement to relief under Michigan Court

Rule 6.508(D).

Ordinarily, when no state court adjudicated the petitioner's claim on the merits

and the claim is not procedurally defaulted, the Court reviews a petitioner's claim de

novo, because AEDPA deference does not apply in those circumstances.  Scott v.

Houk, 760 F.3d 497, 504 (6th Cir. 2014) (quoting Maples v. Stegall, 340 F.3d 433, 436

(6th Cir. 2003)), cert. denied sub nom. Scott v. Fosberg, 135 S. Ct. 1552 (2015).

Petitioner's claim, however, is not cognizable on habeas review.  As explained by the

United States Court of Appeals for the Sixth Circuit,

> errors in post-conviction proceedings are outside the scope of federal
> habeas corpus review.  See Kirby v. Dutton, 794 F.2d 245, 246-47 (6th
> Cir.1986); Roe v. Baker, 316 F.3d 557, 571 (6th Cir. 2002) . . . .  [C]laims
> challenging state collateral post-conviction proceedings "cannot be
> brought under the federal habeas corpus provision, 28 U.S.C. § 2254,"
> because " 'the essence of habeas corpus is an attack by a person in
> custody upon the legality of that custody, and . . . the traditional function of
> the writ is to secure release from illegal custody.' "  Kirby, 794 F.2d at 246
> . . . .  A due process claim related to collateral post-conviction
> proceedings, even if resolved in a petitioner's favor, would not "result [in] .
> . . release or a reduction in . . . time to be served or in any other way affect
> his detention because we would not be reviewing any matter directly
> pertaining to his detention."  Kirby, 794 F.2d at 247. . . .  Accordingly, [the
> Sixth Circuit has] held repeatedly that "the scope of the writ [does not]
> reach this second tier of complaints about deficiencies in state post-
> conviction proceedings," noting that "the writ is not the proper means" to
> challenge "collateral matters" as opposed to "the underlying state
> conviction giving rise to the prisoner's incarceration."  Id. at 248, 247 . . . .

Cress v. Palmer, 484 F.3d 844, 853 (6th Cir. 2007).  Furthermore,

> it would be an unusual intrusion for federal courts to second-guess state
> procedures for resolving motions once they have been presented.  States
> are independent sovereigns, and the federal government generally
> speaking should respect their choices about how to adjudicate disputes.
> . . . [Federal courts] must instead presume that, once a federal claim
> comes before a state court, the state judge will use a fair procedure to
> achieve a just resolution of the claim – resolving some motions with

neither an evidentiary hearing nor an oral argument, some with an oral
argument alone, some with both.

Good v. Berghuis, 729 F.3d 636, 639 (6th Cir. 2013), cert. denied, 135 S. Ct. 1174
(2015).  For the reasons given by the Sixth Circuit in Cress and Good, petitioner's
challenge to the state trial court's post-conviction procedures is not cognizable on
habeas corpus review.

## C.  The Remaining Claims

In his third claim, petitioner alleges that the prosecutor gathered a blood sample
from him without first securing a warrant or his consent and then relied on the results of
a blood test to convict him.  Petitioner contends that this conduct prevented him from
raising a recognized defense to the charges and violated his rights under the Fourth
Amendment and the Due Process Clause of the Fourteenth Amendment.

In claim four, petitioner asserts that the prosecution suppressed written witness
statements, which differed from the witnesses' testimony at trial.  Petitioner contends
that suppression of the statements prevented him from presenting a defense and also
resulted in false testimony being admitted at trial.

In claim five, petitioner alleges that the prosecutor failed to preserve certain
weapons supposedly observed at the crime scene.  Petitioner contends that the
weapons may have exculpated him.

The sixth habeas claim alleges that the investigative tactics employed by the
police violated petitioner's right to due process.  Specifically, petitioner contends that
there was no chain of custody for the evidence that was collected, the evidence was not
subjected to scientific or forensic testing for the presence of DNA, and other evidence at
the crime scene was not collected.

In his seventh and final claim, petitioner alleges that his trial attorney was ineffective.  Petitioner asserts that trial counsel:  (1) failed to attempt to suppress any of petitioner's statements to the police, did not challenge the police officers' representation of the facts, and did not zealously pursue a defense strategy or attempt to investigate key evidentiary issues and testimony; (2) did not challenge discrepancies in the witnesses' testimony and did not move for the admission of weapons found at the crime scene; and (3) failed to question the prosecutor's assertion that Ms. Morgan was unavailable to attend the preliminary examination because she was seeking medical treatment for injuries she incurred during the incident with petitioner.

Petitioner raised claims three through seven for the first time in his motion for relief from judgment.  The trial court denied the motion because petitioner failed to show "good cause" under Michigan Court Rule 6.508(D)(3) for not raising the claims on direct appeal.  Respondent accordingly argues that petitioner's claims are procedurally defaulted.[2]

### 1.  Procedural Default

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  Trest v. Cain, 522 U.S. 87, 89 (1997).  "[A] federal court will not review the merits of [a state prisoner's] claims, including constitutional claims, that a

---

[2]  Respondent argues on page five of his answer to the habeas petition that petitioner procedurally defaulted claims three, six, and seven.  See Answer in Opp'n to Pet. for Writ of Habeas Corpus, ECF No. 16, at 5, Pg ID 295.  Elsewhere, however, respondent points out that petitioner raised claims four and five for the first time in his motion for relief from judgment, despite the fact that Michigan Court Rule 6.508(D)(3) requires a defendant to present his or her claims on direct appeal.  Id. at 48, Pg ID 338.  The Court therefore understands respondent to be alleging that petitioner procedurally defaulted claims four and five, as well as, claims three, six, and seven.

state court declined to hear because the prisoner failed to abide by a state procedural

rule." Martinez v. Ryan, 566 U.S. 1, 9 (2012).

> Determining whether a habeas petitioner's claim has been procedurally
> defaulted is a four-step inquiry:
>
>> First, the court must determine that there is a state
>> procedural rule that is applicable to the petitioner's claim and
>> that petitioner failed to comply with the rule. . . .  Second, the
>> court must decide whether the state courts actually enforced
>> the state procedural sanction. . . .  Third, the court must
>> decide whether the state procedural ground is an adequate
>> and independent state ground on which the state can rely to
>> foreclose review of a federal constitutional claim. . . .  Once
>> the court determines that a state procedural rule was not
>> complied with and that the rule was an adequate and
>> independent state ground, then the petitioner must
>> demonstrate . . . that there was cause for him not to follow
>> the procedural rule and that he was actually prejudiced by
>> the alleged constitutional error.

Kelly v. Lazaroff, 846 F.3d 819, __, No. 15-3950, 2017 WL 244069, at *5 (6th Cir. Jan.

20, 2017) (quoting Stone v. Moore, 644 F.3d 342, 346 (6th Cir. 2011) (quoting Maupin

v. Smith, 785 F.2d 135, 138 (6th Cir. 1986)).

## 2. Steps One through Three

The state procedural rule in question here is Michigan Court Rule 6.508(D)(3),

which generally prohibits a state court from granting relief from judgment if the

defendant's claims could have been raised on appeal from the conviction and sentence

or in a prior motion.  An exception to this rule exists when the defendant demonstrates

"good cause" for the failure to raise the claim on appeal or in a prior post-conviction

motion and "actual prejudice from the alleged irregularities that support the claim for

relief."  Mich. Ct. R. 6.508(D)(3)(a) - (b).

Petitioner violated Rule 6.508(D)(3) by not raising claims three through seven on direct appeal from his convictions.  Thus, the first step of the procedural-default inquiry is satisfied.

The second step entails deciding whether the state court actually enforced the rule.  To determine whether the state court enforced a state procedural rule, the Court "look[s] to the last reasoned state court decision" rejecting the petitioner's claim. Guilmette v. Howes, 624 F.3d 286, 291 (6th Cir. 2010) (en banc).  "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar."  Harris v. Reed, 489 U.S. 255, 263 (1989) (internal quotation marks omitted).

The state trial court was the last state court to issue a reasoned decision on habeas claims three through seven, and it clearly and expressly relied on Rule 6.508(D)(3) to deny relief.  The trial court quoted the relevant portions of the rule and then stated that, because petitioner did not proffer any evidence of good cause for failing to raise his claims on direct appeal, the court was required to deny his motion for relief from judgment.

Although the trial court also briefly addressed the merits of petitioner's claims, these alternative holdings do "not require [this Court] to disregard the state court's finding of procedural bar."  Coe v. Bell, 161 F.3d 320, 330 (6th Cir. 1998).  As explained in Harris,

> a state court need not fear reaching the merits of a federal claim in an underline alternative holding.  By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the

> state court also relies on federal law.  See Fox  Film Corp. v. Muller, 296
> U.S. 207, 210, 56 S.Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying
> this doctrine to habeas cases, [Wainwright v.] Sykes, [433 U.S. 72 (1977)]
> curtails reconsideration of the federal issue on federal habeas as long as
> the state court explicitly invokes a state procedural bar rule as a separate
> basis for decision.  In this way, a state court may reach a federal question
> without sacrificing its interests in finality, federalism, and comity.

Harris, 489 U.S. at 264 n.10 (emphasis in original).

The Court concludes that step two of the procedural-default inquiry is satisfied.

Step three also is satisfied because Rule 6.508(D)(3) is an adequate and independent

ground on which state courts may rely to foreclose review of a habeas petitioner's

federal claims.  Howard v. Bouchard, 405 F.3d 459, 477 (6th Cir. 2005) (citing Simpson

v. Jones, 238 F.3d 399, 407-08 (6th Cir. 2000), and Munson v. Kapture, 384 F.3d 310,

314 (6th Cir. 2004)).

### 3.  Step Four

The remaining question is whether petitioner has established "cause" for his

failure to comply with Rule 6.508(D)(3) and resulting prejudice.  Petitioner argues in his

reply to respondent's answer that his trial and appellate attorneys were "cause" for his

procedural default.  The trial attorney, however, did not represent petitioner on appeal,

and even though ineffective assistance of counsel can be "cause" for a procedural

default, the doctrine of exhaustion of state remedies "generally requires that a claim of

ineffective assistance be presented to the state courts as an independent claim before it

may be used to establish cause for a procedural default."  Murray v. Carrier, 477 U.S.

478, 488-489 (1986).  Petitioner did not raise a claim about appellate counsel as an

independent claim in state court.  Therefore, appellate counsel cannot be "cause" for

petitioner's failure to comply with Rule 6.508(D)(3).

Petitioner also asserts that the closed head injury which he incurred during the crime was "cause" for his procedural default.  He claims that the injury made it extremely difficult for him to communicate with appellate counsel during his direct review and made it unlikely that appellate counsel took his claims seriously.  The record, however, indicates that petitioner was found competent to stand trial. He subsequently testified at trial, filed a <u>pro</u> <u>se</u> application for leave to appeal in the Michigan Supreme Court on direct review, and represented himself on state collateral review.  His closed head injury obviously did not prevent him from pursuing his claims, and it cannot serve as "cause" for his failure to raise all his claims on appeal.

The Court need not determine whether petitioner was prejudiced by the alleged constitutional errors, because he has not shown "cause" for his procedural default. <u>Smith v. Murray</u>, 477 U.S. 527, 533 (1986); <u>Long v. McKeen</u>, 722 F.2d 286, 289 (6th Cir. 1983).  In the absence of "cause and prejudice," a habeas petitioner can proceed with a procedurally defaulted claim only if he "demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice."  <u>Coleman v. Thompson</u>, 501 U.S. 722, 750 (1991).  "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.' "  <u>Lundgren v. Mitchell</u>, 440 F.3d 754, 764 (6th Cir. 2006) (citing <u>Carrier</u>, 477 U.S. at 496).  "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  <u>Schlup v. Delo</u>, 513 U.S. 298, 324 (1995).

Petitioner has not produced any new evidence that was not presented at trial. Therefore, a miscarriage of justice will not occur as a result of the Court's failure to address the merits of his claims.

All four elements of the procedural-default inquiry are satisfied. The Court therefore declines to address the substantive merits of habeas claims three through seven.

## IV.  Conclusion

Habeas claims three through seven are procedurally defaulted, claim two is not cognizable on habeas review, and the state appellate court's adjudication of claim one was objectively reasonable. Accordingly, the Court denies petitioner's application for the writ of habeas corpus.

## V.  CERTIFICATES OF APPEALABILITY AND LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner may appeal this opinion and order dismissing his habeas petition if a district or circuit judge issues a certificate of appealability. 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b)(1). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

> Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. . . .  When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a [certificate of appealability] should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).

Reasonable jurists would not find the Court's assessment of claim one debatable or wrong.  And reasonable jurists would not find it debatable whether the Court's procedural ruling on the remaining claims is correct or whether the petition states a valid claim of the denial of a constitutional right.  The Court therefore declines to issue a certificate of appealability.  The Court nevertheless will allow petitioner to proceed <u>in forma pauperis</u> on appeal, because he was granted leave to proceed <u>in forma pauperis</u> in this Court and an appeal from this decision could be taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

Dated:  March 1, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 1, 2017, by electronic and/or ordinary mail and also on James Conner #600686, Central Michigan Correctional Facility, 320 N. Hubbard, St. Louis, MI 48880.

s/Barbara Radke
Deputy Clerk